**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**KEVEN TOOCOLE TAYLOR**                                                                     **PLAINTIFF**

**VERSUS**                                                    **CIVIL ACTION NO. 1:24-cv-00314-RPM**

**UNKNOWN BOBO, et al.**                                                                   **DEFENDANTS**

<u>**ORDER GRANTING MOTION [27] FOR SUMMARY JUDGMENT**</u>

On October 11, 2024, *pro se* Plaintiff Keven TooCole Taylor filed this lawsuit under 42 U.S.C. § 1983. [1] at 3. Plaintiff is an inmate housed in the custody of the Mississippi Department of Corrections at the South Mississippi Correctional Institution ("SMCI") in Leakesville, Mississippi. *Id*. at 2. He names Sergeant Unknown Bobo and 2 Unknown Nurses as Defendants. *Id*. at 2-3; Stip. [21]. Plaintiff is proceeding *in forma pauperis* [5], and his allegations were clarified at an Omnibus Hearing on April 3, 2025.[1]

Sergeant Bobo filed a Motion [27] for Summary Judgment on July 9, 2025. Plaintiff did not respond, despite having a chance to do so. (Text-Only Order, Apr. 3, 2025). For the following reasons, Sergeant Bobo's Motion [27] for Summary Judgment will be granted, and Plaintiff's claims against all Defendants will be dismissed with prejudice.

**I. BACKGROUND**

**A. Plaintiff's Allegations**

The events giving rise to this lawsuit occurred while Plaintiff was housed at the Jackson County Adult Detention Center ("JCADC") in Pascagoula, Mississippi. [1] at 4. Plaintiff complains that "water seeped through the foundation" at JCADC, so "the place was flooded out."

---

[1] *See Spears v. McCotter*, 766 F.2d 179, 181-82 (5th Cir. 1985) (authorizing the magistrate judge to "hold an evidentiary hearing" to allow a *pro se* plaintiff to provide a more definite statement), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319, 324 n.3 (1989).

[23] at 22-23. Plaintiff testified that this condition presented "a lot of hazards," including the possibility of "electrical shock," though he concedes that he "didn't get shocked." *Id*. at 23. He also complains that the standing water attracted "bugs and stuff," but he admits that his custodians offered "rags," "mops," and "fans" to "soak up" or "evaporate" the water. *Id*. at 24-25.

On August 13, 2024, Plaintiff "slipped [and] fell in a puddle of water that was stagnant on the dayroom floor right outside [his] cell." [1] at 5. He claims that three other inmates "witnessed [him] fall," and one of them "hit the button for help." *Id*. Sergeant Bobo and several others "came to assist [him]," but he "was immediately told [that he] wasn't going to the hospital." *Id*. Plaintiff believes that Sergeant Bobo "ignored the knot on [his] head [and] the amount of pain [he] was in because it was the end of her shift [and] she was ready to go home." *Id*. at 4.

Because of the fall, Plaintiff claims that he "sustained injuries to [his] head, neck, back [and] arm . . . [on] the left side of [his] body." [1] at 5. Plaintiff complains that he "was denied proper medical treatment as far as an x-ray or full medical evaluation." *Id*. Instead, Plaintiff testified that a "nurse did a little evaluation" on the zone and offered to keep Plaintiff in "medical observation . . . for . . . 24 hours." [23] at 10. During that time, Plaintiff received ibuprofen and Tylenol within one hour of the incident. *Id*. at 11. He received another ibuprofen "at lunchtime," when a nurse stopped by to take his blood pressure. *Id*. at 12. By that evening, Plaintiff was "tired of being in there," so he "requested [to] . . . go back to [his] zone." *Id*. at 13.

Plaintiff "filled out a sick call" request the next day, complaining about lingering back pain. [23] at 14. He "didn't get a chance" to see another provider at JCADC because he was transferred to SMCI shortly after the fall. *Id*. at 13-15. Plaintiff requested more medical care at SMCI and finally received an x-ray and "steroid shots" in both hips the next month. *Id*. at 15-16. By the time

of the Omnibus Hearing, providers at SMCI had not sent Plaintiff to the hospital for evaluation either. *Id*. at 18.

Plaintiff wants Jackson County to "pay for any [and] all medical bills that [he] may accumulate now [and] in the future," along with $150,000.00 "for pain [and] suffering and loss of future wages." [1] at 5. Plaintiff also claims that he should be compensated "for [Jackson County] neglecting to maintain a safe and sanitary facility that contribute[d] to [his] injuries." *Id*.

### B. Defendants' Summary Judgment Evidence

Among other pieces of evidence, Defendants submitted excerpts of Plaintiff's medical records relevant to the August 13 incident. On August 13 at 6:33 a.m., Nurse Roseann Sistrunk recorded the following patient note:

> [Inmate] states he hurt his head and back when slipped on water, initially refused to get up stating he could not move and had to go to hospital. I explained to [inmate] there are some thing[s] I had to assess before I could consider an ER visit, finally encouraged [patient] and assisted him to sitting position. Eyes equal and reactive to light, [inmate] had good podal pulses and minus any obvious neuro deficits from neuro checks, I informed [inmate] that we would move him to booking for closer monitoring, he will be evaluated throughout the day. [Inmate] now states that he does feel a little better now, medicated with stat 1000mg Tylenol and 800mg Motrin, safety and POC ongoing.

[27-1] at 6; *see also* [23] at 32-33.

At 2:15 p.m., Nurse Alyssa Stewart recorded the following update:

> Inmate in holding cell H8 for medical observation related to previous fall in block. Inmate awake and alert sitting on side of bunk reading Bible. Speech clear. Oriented x4. Blood pressure 142/88 - Pulse 101 - O2 @ 99% on room air - Temp 97.8. Inmate denies . . . any pain at this time. Hand grip firm and equal. Pupils reactive and equal. No signs and symptoms of acute distress noted at this time. Inmate will be cleared for general population.

[27-1] at 8. Plaintiff received a follow-up appointment with Nurse Angela Reynolds on August 17, 2024. *Id*. at 9.

## II. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Westfall v. Luna*, 903 F.3d 534, 546 (5th Cir. 2018) (quotation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quotation omitted). "On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *E.E.O.C. v. WC&M Enters., Inc.*, 496 F.3d 393, 397 (5th Cir. 2007). "In reviewing the evidence, the court must therefore refrain from making credibility determinations or weighing the evidence." *Id*. at 397-98 (quotation omitted).

"Summary judgment is proper if the movant demonstrates that there is an absence of genuine issues of material fact." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). "The movant accomplishes this by informing the court of the basis for its motion, and by identifying portions of the record which highlight the absence of genuine factual issues." *Id.* "Rule 56 contemplates a shifting burden: the nonmovant is under no obligation to respond unless the movant discharges its initial burden of demonstrating entitlement to summary judgment." *Mack v. Waffle House, Inc.*, No. 1:06-cv-00559-RHW, 2007 WL 1153116, at *1 (S.D. Miss. Apr. 18, 2007) (quotation and brackets omitted). "[O]nce a properly supported motion for summary judgment is presented, the nonmoving party must rebut with significant probative evidence." *Id*. (quotation omitted).

### III. DISCUSSION

Plaintiff raises two constitutional claims: (1) unconstitutional conditions of confinement and (2) denial of medical care.[2] Yet he has failed to allege and prove a constitutional violation, so his claims against all Defendants in their official and individual capacities will be dismissed with prejudice.

### A. Official-Capacity Claims

Plaintiff indicated on his Complaint that he intends to sue all Defendants in their official capacities. [1] at 2-3. An official-capacity claim against a municipal employee is a claim against the municipality itself. *See Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Thus, with respect to the official-capacity claims now before the Court, Jackson County is "the real party in interest." *See Harris v. Jackson Cnty.*, No. 1:14-cv-00435-LG-RHW, 2015 WL 1427412, at *2 (S.D. Miss. Mar. 27, 2015) (quotation omitted).

"Municipal liability under [S]ection 1983 requires proof of three elements: a policymaker, an official policy; and a violation of constitutional rights whose moving force is the policy or custom." *Wilson v. Pearl River Cnty.*, No. 1:08-cv-01353-JMR, 2010 WL 235027, at *2 (S.D. Miss. Jan. 15, 2010) (quotation omitted); *see also Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). "Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom." *Wilson*, 2010 WL 235027, at *3. In other words, "Congress did not intend municipalities to be held liable unless action pursuant to an official municipal policy of some

---

[2] Plaintiff confirmed at the Omnibus Hearing that he is not bringing "some garden variety . . . slip and fall" claim under state law. [23] at 22.

nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

Plaintiff has offered no "summary-judgment evidence identifying any official policy that caused his constitutional violations," nor has he "identif[ied] a custom amounting to official-municipal policy." *See Amerson v. Pike Cnty., Miss.*, No. 3:09-cv-00053-DPJ-FKB, 2013 WL 53900, at *3 (S.D. Miss. Jan. 3, 2013). Instead, Plaintiff testified that his custodians provided ways to "soak up" any standing water, [23] at 24, and the summary-judgment evidence shows that he received medical care after his fall, [27-1] at 6-9. Thus, the standing water outside Plaintiff's cell and his disagreement with the medical care after his fall represent "isolated incident[s] for which Jackson County cannot be liable." *See Ladnier v. Nelson*, No. 1:22-cv-00167-RPM, 2024 WL 2701697, at *6 (S.D. Miss. May 24, 2024). Plaintiff's official-capacity claims against all Defendants must be dismissed with prejudice. *E.g.*, *Knight v. Nobles*, No. 2:22-cv-00132-TBM-RPM, 2025 WL 635233, at *4 (S.D. Miss. Feb. 3, 2025) (recommending dismissal of official-capacity claims where the plaintiff "failed to allege and offer any proof of a policy or custom of Perry County that caused the alleged constitutional violations against him"), *report and recommendation adopted by*, 2025 WL 627230, at *1 (S.D. Miss. Feb. 26, 2025).

In any event, as discussed below, Plaintiff has failed to state a constitutional violation. "The Fifth Circuit has stated time and again that without an underlying constitutional violation, an essential element of municipal liability is missing." *Clifford v. Harrison Cnty., Miss.*, 596 F. Supp. 3d 634, 642 (S.D. Miss. 2022) (quotations and brackets omitted). Notwithstanding the prior analysis, Plaintiff's official-capacity claims will be dismissed with prejudice for this reason too.

### B. Individual-Capacity Claims

Plaintiff's individual-capacity claims fare no better, as no constitutional violation exists on

these facts. As a threshold matter, Plaintiff has not formally identified the fictitiously named nurse Defendants, and he testified that he did not intend to do so. That is, he wants "to proceed solely against Sergeant Bobo." [23] at 48. Thus, even if the Court identified a constitutional violation (and it does not), Plaintiff's claims against 2 Unknown Nurses would be dismissed.

For purposes of the following analysis, Plaintiff was a "[c]onvicted and sentenced state prisoner" when the events giving rise to this lawsuit occurred. [1] at 4. Specifically, Plaintiff testified that he was housed on the "state side" of the jail as a "[p]robation violator." [23] at 9. He testified that he had been convicted of the revocation offense on July 24—about three weeks before the slip-and-fall incident on August 13. *Id.* at 29. Thus, Plaintiff is a convicted prisoner whose constitutional rights flow from the Eighth Amendment. *See* [28] at 4.

### i. Conditions of Confinement

"The Constitution does not require that prisoners be provided pleasant surroundings or a comfortable jail." *Burke v. Allison*, No. 1:08-cv-01496-RHW, 2010 WL 3827942, at *4 (S.D. Miss. Sept. 24, 2010). "Inmates cannot expect the amenities, conveniences and services of a good hotel." *Wilson v. Lynaugh*, 878 F.2d 846, 849 n.5 (5th Cir. 1989) (quotation omitted). "[R]outine discomfort is part of the penalty that criminal offenders pay for their offenses against society." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quotation omitted). Thus, the Constitution is not concerned with "a *de minimis* level of imposition" on inmates. *Ingraham v. Wright*, 430 U.S. 651, 674 (1977) (emphasis added).

"A prison condition constitutes an Eighth Amendment violation only when two requirements are met." *Gales v. Farmer*, No. 1:07-cv-00485-WJG-JMR, 2008 WL 4057027, at *12 (S.D. Miss. Aug. 26, 2008). "First, there is an objective requirement that the alleged condition

7

be so serious as to deprive the prisoner of the minimal civilized measure of life's necessities, such as some basic need." *Id*. (quotation omitted). "Second, the prison official must have been deliberately indifferent to the inmate's health or safety." *Id*. Under the deliberate-indifference standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Accordingly, a prison official's failure to eliminate a substantial risk of harm which he *should have* perceived, but in fact *did not* perceive, cannot support an imposition of liability under the Eighth Amendment." *Gales*, 2008 WL 4057027, at *12 (emphasis in original).

Moreover, any prisoner seeking to recover compensatory damages on a conditions-of-confinement claim must establish a physical injury that is more than *de minimis*. *Alexander v. Tippah Cnty.*, 351 F.3d 626, 631 (5th Cir. 2003) (citing 42 U.S.C. § 1997e(e)). "Injuries which normal people treat with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e)." *Pinkston v. Lee*, No. 5:22-cv-00018-KS-MTP, 2023 WL 2518914, at *3 (S.D. Miss. Jan. 20, 2023) (quotation omitted), *report and recommendation adopted by*, 2023 WL 2507600, at *1 (S.D. Miss. Mar. 14, 2023).

Under the Eighth Amendment, Plaintiff's complaint about standing water fails to state a constitutional violation. "[T]he occasional presence of open and obvious water on the floor . . . does not rise to the level of a substantial or excessive risk to inmate health or safety." *Gales*, 2008 WL 4057027, at *12-13 (rejecting Eighth Amendment claim that prison floors "were persistently covered in standing water"). "[S]lippery floors constitute a daily risk faced by members of the public at large," so "slippery prison floors do not violate the Eighth Amendment." *Reynolds v.*

*Powell*, 370 F.3d 1028, 1031 (10th Cir. 2004) (collecting cases rejecting standing-water claims under the Eighth Amendment); *see also Stanley v. Page*, 44 F. App'x 13, 15 (7th Cir. 2002). "Additionally, Plaintiff has not pled any facts suggesting [that Defendants] . . . were not taking proper precautions, or that there was a pattern of detainees falling at [JCADC]." *See Nelson v. Higgins*, No. 4:19-cv-00237-JM-JJV, 2019 WL 2383441, at *2 (E.D. Ark. May 20, 2019), *report and recommendation adopted by*, 2019 WL 2402961, at *1 (E.D. Ark. June 5, 2019). Rather, he admits that Defendants provided him with means "to clean up the water," so "they were at most negligent" for failing to fix whatever structural issues caused the standing water in the first place. *See Latin v. Martin*, No.4:19-cv-04003, 2020 WL 1222713, at *4 (W.D. Ark. Feb. 18, 2020), *report and recommendation adopted by*, 2020 WL 1189934, at *1 (W.D. Ark. Mar. 12, 2020).

What is more, Plaintiff has failed to allege that he suffered a greater-than-*de-minimis* physical injury because of the standing water. Plaintiff vaguely referenced "respiratory problems" at the Omnibus Hearing, but he admittedly does not "know if [those problems] came from [the standing water] or what." [23] at 39. Speculative and conclusory assertions like this are insufficient to state a constitutional claim in the first place. *See Mann v. Hall*, No. 1:20-cv-00267-LG-RPM, 2023 WL 5956373, at *3 (S.D. Miss. July 26, 2023), *report and recommendation adopted by*, 2023 WL 6394369, at *3 (S.D. Miss. Sept. 29, 2023). And the injuries Plaintiff allegedly sustained because of the slip and fall do not rest within the parameters of § 1997e(e), as any resulting pain was treated with over-the-counter medications and apparently lasted less than 24 hours. [23] at 11; [27-1] at 8 (denying the existence of pain during a medical examination at 2:15 p.m. on the day of the incident). Having failed to allege a constitutional violation, or the requisite physical injury, Plaintiff's conditions-of-confinement claim must be dismissed with prejudice.

### *ii.* *Denial of Medical Care*

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Tex. Dep't of Crim. Justice*, 91 F. App'x 963, 964 (5th Cir. 2004). Again, to prove deliberate indifference, Plaintiff must show that Defendants knew of and disregarded an excessive risk to his health or safety. *Farmer*, 511 U.S. at 837. "Deliberate indifference is an extremely high standard to meet." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001).

"Deliberate indifference cannot be inferred from negligent, or even grossly negligent, acts or omissions of a defendant; mere negligence, neglect, unsuccessful medical treatment or even medical malpractice do not give rise to a § 1983 cause of action." *Toomer v. Coulter*, No. 1:18-cv-00312-RHW, 2020 WL 1286215, at *3 (S.D. Miss. Mar. 18, 2020). "A prisoner claiming deliberate indifference to serious medical needs must submit evidence that Defendant 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id*. (quoting *Davidson*, 91 F. App'x at 965). "The determinative issue is not whether the medical treatment plaintiff received was subpar in some respect, whether his medical problems persisted despite treatment, or whether he was dissatisfied with his care; rather, it is only whether his serious medical needs were met with deliberate indifference." *Id*. (quotation, alterations, and emphasis omitted).

"Deliberate indifference is especially hard to show when the inmate was provided with ongoing medical treatment." *Fails v. DeShields*, 349 F. App'x 973, 976 (5th Cir. 2009). That is, "the existence of continuous medical care often precludes a finding of deliberate indifference."

10

*Collins v. Caskey*, No. 4:07-cv-00058-HTW-LRA, 2009 WL 2368578, at *3 (S.D. Miss. July 29, 2009). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). "Mere delay in receiving care is not in and of itself a constitutional violation." *Jones v. Perry*, No. 2:11-cv-00044-MTP, 2012 WL 3267540, at *3 (S.D. Miss. Aug. 9, 2012) (quotation omitted). "Plaintiff's disagreement with the speed, quality, or extent of medical treatment . . . do[es] not give rise to a Section 1983 claim." *Id*. (quotation omitted).

For two reasons, Plaintiff has not shown a constitutional violation based on the alleged denial of medical care. *First*, Sergeant Bobo (the only named Defendant) was not ultimately responsible for the provision of Plaintiff's medical care. Plaintiff blames Sergeant Bobo for refusing to send him to the emergency room after his fall, claiming that she "didn't really want to do the paperwork to let [him] go." [23] at 36. But Sergeant Bobo submitted as evidence the "Agreement for Inmate Health Care Services" between Jackson County, Mississippi, and Vitalcore Health Strategies, LLC. [27-1] at 3-5. That agreement makes it Vitalcore's responsibility to "identify the need, schedule, and coordinate all . . . emergency medical care rendered to inmates" at JCADC. *Id*. at 4. In other words, "prison officials are entitled to rely on qualified medical provider's opinions in determining what medical care is appropriate." *Dixon v. Rushing*, No. 3:07-cv-00379-JCS, 2009 WL 3163227, at *5 (S.D. Miss. Sept. 29, 2009).

*Second*, and most important, Plaintiff received immediate and ongoing medical care for his injuries. Plaintiff testified that he was examined by a nurse on the zone right after he fell, that he was placed in medical observation for several hours, and that he received Tylenol and ibuprofen for the pain. [23] at 10-11. The summary-judgment evidence confirmed that he was evaluated by

11

two other nurses over the next few hours and was finally "cleared for general population" when they noted "[n]o signs and symptoms of acute distress." [27-1] at 6, 8. At most, Plaintiff disagreed with their decision not to outsource his care to the emergency room, but "an inmate's mere disagreement with the course of medical treatment does not give rise to a constitutional claim." *Ward v. Hill*, No. 5:11-cv-00065-FKB, 2014 WL 4370646, at *3 (S.D. Miss. Sept. 2, 2014) (quotation omitted). Plaintiff's medical-care claim must also be dismissed with prejudice. *See Riley v. Health Assurances, LLC*, No. 1:09-cv-00201-RHW, 2010 WL 148225, at *3 (S.D. Miss. Jan. 11, 2010) (rejecting a prisoner's medical-care claim after a slip and fall at the county jail where he was repeatedly examined and administered medication after the incident).

## IV. CONCLUSION

The Court has considered and liberally construed all pleadings, testimony, and arguments. Any not specifically mentioned herein would not have changed the outcome.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion [27] for Summary Judgment filed by Defendant Sergeant Unknown Bobo is **GRANTED**. Plaintiff Keven TooCole Taylor's claims against all Defendants are **DISMISSED WITH PREJUDICE**. A separate final judgment will be entered under Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED,** this 13th day of March, 2026.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE